JONES, Judge.
On August 11, 1958, Mrs. Clemmie Moak filed suit against the Illinois Central Railroad Company and the American Automobile Insurance Company, the liability insurer of her husband, Clarence Moak, driver of the automobile in which she was riding at the time of the happening of an accident on August 10, 1957. She sought recovery of substantial damages for injuries sustained, primarily to her left arm, as a result of a collision between the car her husband was driving and a train of the other defendant. Her husband filed suit against the Illinois Central Railroad Company seeking recovery for alleged personal injuries received by him as a result of the accident.
The defendant, American Automobile Insurance Company, filed a plea of res judicata in the suit of Mrs. Clemmie Moak in which it was made a codefendant and the defendant railroad compay filed an exception of no right of action in said suit. The defendant railroad company also filed an exception of no right of action in the *7 suit of Clarence Moak against it and the suits were consolidated for the purpose of trial of the issues presented. The plea and the exceptions were based on the execution of a release by Mrs. Clemmie Moak, as well as Clarence Moak, without reservation, covering all claims growing out of the collision between the automobile driven by Moak and a freight train of the Illinois .Central Railroad Company.
When the matters came on to he heard in the District Court, testimony was taken for a determination of whether or not the release was signed as a result of fraud, error or misrepresentation by the defendant insurance company through its adjuster. At the time this testimony was taken, it does not appear that the supplemental petition was filed alleging that the release was signed through fraud, error or misrepresentation. We note that the order of the judge permitting the supplemental petition to be filed was dated March 23, 19S9 and the certification by the Clerk on the bottom of this amended petition shows that it was filed on March 23, 1959. The first transcript of the testimony, which was prior to the filing of the supplemental petition, shows that it was taken on March 16, 1959. However, it is noted in the minute entry contained in the record in the case of Clarence Moak v. Illinois Central Railroad Company, under date of March 16, 1959, that the court ruled that, as a result of the stipulation between counsel, the testimony offered that day on the plea of res judicata was to be re-offered and made applicable to the supplemental petition when same was filed. Of course, the supplemental petition was subsequently filed in both cases and, we believe, under the circumstances the District Court was justified in considering the testimony offered on March 16, 1959 which had to do with nullification of the release on the ground of fraud, error or misrepresentation. Further, counsel for the defendant insurance company waived cross-examination on the second hearing provided he might stand on the testimony taken on the first hearing (tr. of November 16, 1959, page 24). Judgment was rendered upholding the validity of the release and sustaining the plea of res judicata filed on behalf of defendant insurance company as well as the exception of no right of action filed on behalf of defendant railroad company.
A new trial was granted and testimony was subsequently taken on November 16, 1959. After this hearing, the District Court rendered judgment in conformity with its original decree.
The plaintiff has appealed, specifying that the trial court erred, first in failing to set aside the release as it was obtained as a result of either misunderstanding, error, misrepresentation or fraud; second, in failing to recogniz^ the fiduciary or quasi-fiduciary relation which was created and violated by the adjuster; and, third, in allowing defendant Illinois Central Railroad Company the benefit of the alleged release as it was never established that said railroad company was a joint tort-feasor and only alleged to be so alternatively in the petition of Mrs. Clemmie Moak.
In addition to the alleged personal injuries and damage to the car, there was a claim for property damage for certain clothing of the wife, Mrs. Clemmie Moak. It seems that shortly after the accident a wrecker was called for and wdiile it was towing the damaged automobile a fire broke out destroying the clothing. The value of this clothing is shown to be $242. The insurer of the wrecker was the Globe Indemnity Company and plaintiff had been unsuccessful in collecting this amount from said company. On October 3, 1957, or about seven weeks after the accident, the husband, Clarence Moak, went to the office of the adjuster of the defendant American Automobile Insurance Company and at that time informed said adjuster he was having difficulty in collecting from the Globe Indemnity Company for the loss of the clothing. The adjuster stated he would try to collect the amount and it was at this time that a release was drawn up from the *8 plaintiffs, Mrs. Clemmie Moak, as well as Clarence Moak, to the American Automobile Insurance Company releasing all claims that she or he had in connection with Mr. Moak’s personal injuries, as a result of said accident. The amount of the release was $242. After this release was drawn and read by Clarence Moak, he and the adjuster went to his home where it was ■signed by him as well as his wife, Mrs. Clemmie Moak. Her testimony is to the effect that she did not read it. In large bold letters on the top of this release the following appears:
“Full And Final Release Covering All Claims Or Rights Of Action Of Every Description, Past, Present Or Future”
In addition thereto; it is set forth in the body of the release that:
“It is expressly understood and agreed that this release and settlement is intended to cover and does cover not only all now known injuries, losses and damages but any future injuries, losses and damages not now known or anticipated but which may later develop or be discovered, including all the effects and consequences thereof.
“And I,/we, hereby declare that I/we fully understand the terms of this settlement; that the amount stated herein is the sole consideration of this release and that I/we voluntarily accept ■said sum for the purpose of making a full and final compromise, adjustment and settlement of all claims for injuries, losses and damages resulting or to result from said accident.”
The above two quotations are on the printed form of release but, in addition thereto, there is written in longhand the following:
“It is agreed and understood that the execution of this release in no way affects my claim under the ‘Medical Payments’ portion of my policy.”
The testimony of Mr. Clarence Moak shows that it was at his suggestion that this latter paragraph was written on the release by the adjuster (tr. of March 16, 1959, page 28, and tr. of November 16, 1959, page 31). There is a notation on the draft of $242 which was cashed by the plaintiff showing that it was accepted subject to the conditions of the above release.
Mr. Clarence Moak has been working for the Illinois Central Railroad Company for thirty-eight years as a clerk and he admitted that his duties resulted in his being somewhat familiar with documents, reports and records. He further admitted that he read the release but denied under direct examination that certain printed portions of the release having to do with the injuries were contained therein. However, under cross-examination, he failed to deny that these provisions were in said release. Further than this, he admitted at the time he talked to the adjuster and when the release was signed that he knew his wife had a claim against the insurance company for he knew what kind of insurance he had (tr of March 16, 1959, page 40).
The adjuster testified that he believed there was no liability on the part of the insurance company and that he based his belief on an examination of the crossing where the accident took place, finding that it was in a depressed area with weeds and trees obstructing the view of a driver who was going over the railroad track.
We feel certain fi'om all the testimony, as did the District Judge, that Mr. Moak understood this release and we believe likewise that his wife understood it because he was apparently acting as her agent and the fact that she did not read the release is no excuse. One of the most significant clauses in the release is the writing in longhand at the bottom thereof wherein the medical payments for the wife were excluded from the release. This was placed there at Mr. Moak’s direction and it is indicative of the fact that he, and through him his wife, understood the whole import of the release. For these reasons, we are of the opinion that the release was *9 not signed through misunderstanding, error, fraud or misrepresentation and that the real intention of Mrs. Moak is shown by her act of executing the written instrument which is plain and explicit. Transactions and compromises of this character have been repeatedly upheld by the courts of this state. Tooke v. Houston Fire & Casualty Insurance Co., La.App., 122 So.2d 109; Blades v. Southern Farm Bureau Cas. Ins. Co., La.App., 95 So.2d 209; Williams v. Marionneaux, La.App., 116 So.2d 57, 59; Jackson v. United States Fidelity and Guaranty Co., La.App., 199 So. 419; Thompson v. Kivett & Reel, La.App., 25 So.2d 124.
¡We are of the opinion that the District Court did not err in failing to recognize that a fiduciary or quasi-fiduciary relation was violated by the adjuster. The record does not show the adjuster withheld any information that he might have had which, it could reasonably be believed, could make his company liable. In the cases of Griffing v. Atkins, La.App., 1 So.2d 445, and Brandon v. Gottlieb et al., 16 La.App. 676, 132 So. 283, relied on by plaintiff, it is true that a quasi-fiduciary relation was commented upon but the real reason for the court holding in those cases that the releases were not valid and binding was the failure of those representing the defendant to apprise plaintiff of certain facts which were known by those representing the defendant and which facts would have made the defendant liable.
’ For the above and foregoing reasons, we are of the opinion that the trial court was correct in sustaining the plea of res judicata on behalf of defendant insurance company as to the claim of plaintiff, Mrs. Clemmie Moak.
It is contended by plaintiff that the trial court erred in sustaining the exception of no right of action on behalf of the Illinois Central Railroad Company because it was never established that said company was a joint tort-feasor, it being alleged alternatively. It is true that in Mrs. Moak’s petition, in her primary demand, she sought recovery against the railroad company and in the alternative she sought recovery against both the railroad company and the insurance company. We admit for the sake of argument that the alternative demand seeking a judgment in solido against the insurance company and the railroad company does not establish that they are joint tort-feasors. However, there is other evidence in this case attesting to the fact that said defendants were admitted by this plaintiff to be joint tort-feasors. In the release which she signed stating that she released all her claims for personal injuries against the American Automobile Insurance Company, she claimed that said American Automobile Insurance Company was legally liable for her injuries, losses and damages and said company expressly denied the said liability. The language set forth in the release is as follows:
“For which injuries, losses and damages I/we claim that said Clarence Moak and American Automobile Insurance Company' to be legally liable, which liability is expressly denied. It being understood and agreed that the acceptance of said sum is in full accord and satisfaction of a disputed claim and that the payment of said sum is not an admission o.f liability.”' (Italics ours.)
Thus, since the release reflects that she received the settlement on the ground that the insurance company was- legally liable, she cannot now be heard to complain that the insurance company was not conceded by her to be liable and consequently a cotort-feasor with the railroad company which she later sued.
The release given by the present plaintiff is very similar to the release givem in the case of Reid v. Lowden, 192 La. 811, 189 So. 286. Therein, the plaintiff stated' that he understood that the company expressly denied liability and he contended-that the company was liable to him in damages. It was the contention of the plain. *10 tiff in the Lowden case that the Court of Appeal erred in holding that the release of one who is claimed to be a tort-feasor without a reservation against another who is claimed to be a cotort-feasor releases the latter prior to a judgment of court condemning it as solidary tort-feasor-obligors. The court held that there was but one debt and since there could be but one satisfaction ■of it, then the release of one cotort-feasor, the plaintiff having conceded as much by stating that he was liable in the release given without reservation, constituted a release of the other cotort-feasor who was subsequently sued. Accordingly, the case is authority for the proposition that there does not have to be a judgment of court condemning two persons as cotort-feasors provided the plaintiff has released one of them without reservation where it is admitted by the plaintiff that the one released was liable.
Article 2203 of the LSA-Civil Code provides :
“The remission or conventional discharge in favor of one of the codebt-ors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter.”
Joint tort-feasors are governed by the provisions of Article 2203 as they are liable in solido for the damages inflicted by them. Owen v. Brown, 13 La.Ann. 201; Orr & Lindsley v. Hamilton, 36 La.Ann. 790; Reid v. Lowden, supra.
Accordingly, we are of the opinion that the release of the insurance company without reservation constituted a release of the railroad company.
For the reasons heretofore given, the plea of res judicata filed on behalf of defendant insurance company will be maintained and the exception of no right of action filed on behalf of defendant railroad company will likewise be maintained.
Affirmed.
HERGET, J., recused.